In the Matter of the WELFARE OF A.C. and T.C., Children.

No. C3-85-58.

Court of Appeals of Minnesota.

Aug. 27, 1985.

Review Denied Oct. 18, 1985.

Jay W. Liedman, Kandiyohi County Public Defender, Willmar, for appellant Mother.

John D. Holbrook, Willmar, for children.

Warren Kochis, Asst. Kandiyohi County Atty., Willmar, for respondent.

Bonnie Nelson, Guardian Ad Litem's Office, Willmar, Guardian Ad Litem.

Heard, considered and decided by LESLIE, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

LESLIE, Judge.

Appellant-mother appeals the juvenile court order adjudicating two of her children, A.C. and T.C., to be dependent pursuant to Minn.Stat. § 260.015(6)(d) (1984). We affirm.

## FACTS

Appellant is the mother of A.C., a five year old girl, and T.C., a six year old boy. Appellant has nine children, eight boys and one girl. A.C. and T.C. are the only two of appellant's nine children in appellant's custody at this time.

The dependency petition in this matter alleged that A.C. and T.C. were engaging in sexual relations with one another, that appellant was aware of the sexual activity and did nothing to prevent such activity:

> It was learned from Debbie Kitchenmaster that T.C. had told her that he had been screwing A.C. T.C. also told Debbie that he had told his mother that he was screwing A.C. and she told him not to play with the children anymore. When asked what his mother did while he was screwing A.C., T.C. said Mom is always in bed, talking on the phone, listening to country music or watching T.V.

The juvenile court pursuant to this matter determined:

> That the children are Dependent within the meaning of [Minn.Stat.] § 260.-015(6)(d) in that the children have been participating in incestuous sexual relations with each other with the knowledge of [appellant], and that there has been little or no evidence of any preventative action by [appellant], nor that she has the knowledge or ability to prevent such action, nor that she cares to so prevent, nor that said children are aware of the

significance or consequences of such action.

The subsequent disposition order transferring the care, custody, and control of A.C. and T.C. to the Kandiyohi County Welfare Board for placement in foster care was stayed pending the outcome of this appeal.

Several of appellant's children were placed in foster care in August 1982. The record suggests those children were originally placed in foster care because appellant could not immediately provide housing for all her children at that time. Appellant had recently left a marriage in which her testimony indicates she was physically, psychologically, and sexually abused.

Kandiyohi County authorities first became aware of sexual abuse between appellant's children in September 1982. At that time two of appellant's children in foster care disclosed to their foster mother that J.C., the oldest child in the family, had sexual relations with them. A psychologist's report admitted into evidence at this hearing reveals that appellant's three oldest children had sexually abused their younger brothers, including T.C. That report also reveals that two of the younger brothers were also engaging in sexual activities with each other. Subsequently, in October 1982 all eight children involved in the sexual abuse as either offenders or victims were adjudicated dependent. The dispositional order arising from the 1982 dependency action provided that appellant attend individual or group counseling at West Central Community Services Center (the Center) as directed by Kandiyohi County Family Services. After a brief placement in foster care T.C. was returned to appellant's custody. A.C. was not a subject of the 1982 dependency action and was never removed from appellant's custody. The other children remain in foster care.

The precipitating event for this action occurred on August 22, 1984. Appellant testified that on that date A.C. came home with her underpants on inside out. Appellant's testimony indicates that upon her inquiry A.C. and T.C. told appellant that T.,

a ten year old neighbor, had sexual relations with A.C. This incident occurred in a clubhouse behind a neighbor's house. T.C. observed the sexual activity through a hole in the clubhouse wall.

On August 24, 1984, appellant reported this incident to the County. That day Sondra Anderson, a child protection worker, and Julie Asmus, a police investigator, went to appellant's residence. Asmus testified that appellant, in response to questioning, stated that she had not suspected sexual activity involving A.C. before this incident. Later that day appellant brought A.C. and T.C. for a session with a psychologist, Dr. Jon Standahl.

On August 29, 1984, the County received a call from Debbie Kitchenmaster. Kitchenmaster had befriended appellant and occasionally cared for A.C. and T.C. Kitchenmaster reported that A.C. had disclosed to her that she and T.C. had engaged in sexual activity in an incident behind a local school.

Subsequent to Kitchenmaster's call, Asmus interviewed appellant again. Asmus testified that appellant at that time reported that she had discovered T.C. and A.C. engaged in sexual activity in an incident in their shared bedroom "on one occasion for sure."

On August 31, 1984, a dependency petition was filed. A.C. and T.C. were temporarily removed from appellant's custody, then returned to appellant pursuant to protective supervision by the County. The dependency hearing was conducted on November 13, 1984.

Anderson did not testify at the dependency hearing. David Danroth, another child protection worker, testified that pursuant to the 1982 dispositional order it was arranged for appellant to attend a day treatment program at the Center. His testimony indicates that appellant missed several appointments and participated only minimally. Consequently, appellant was dropped from that program. In July of 1983 arrangements were made for appellant to participate in a family sexual abuse

treatment program for nonoffenders at the Center. Danroth testified that appellant was also dropped from that program for nonparticipation.

Kitchenmaster testified that on August 29, 1984, A.C. disclosed to Kitchenmaster that A.C. and T.C. had engaged in sexual relations. She testified that T.C. confirmed that such activity had occurred in a conversation she had with him the same day. At that time T.C. related that he engaged in sexual relations with A.C. behind the weeds at a local school. He also related he observed the clubhouse incident. Kitchenmaster's testimony reflects this sexual activity occurred as part of a game played by the neighborhood children. Kitchenmaster testified when she asked T.C. if his mother knew about the school incident T.C. responded "yeah." A.C. and T.C. did not disclose or intimate any other sexual activity involving A.C. had occurred.

Bonnie Nelson is the guardian ad litem for the children. Her testimony indicates her assessment that appellant lacked control over the children, especially T.C. (E.g., during the home visit T.C. would persist in doing something after being told to stop.) Her testimony also indicates her opinion that appellant loves both children. A.C. and T.C. would not discuss with Nelson any sexual activity that had occurred between them.

Appellant testified that when she reported the clubhouse incident to Anderson that she had "no idea" that T.C. was also involved. However, her testimony also indicates that appellant "had a feeling" T.C. may have been "involved in everything over at the fort." Consequently, appellant took A.C. and T.C. for a session with Dr. Standahl on August 24 after her interview with Asmus and Anderson. Her testimony indicates that T.C. admitted at that time he was "involved," but does not indicate precisely what T.C. admitted. Appellant also testified that she felt uncomfortable in the programs recommended by Danroth, and that she had benefitted from participation in the alternative counseling she had sought. Finally, appellant testified regard-

ing her love for her children stating, " * * * as far as I'm concerned, my kids are my life." Appellant also admitted that she had never been able to talk to any of her children regarding the sexual abuse that precipitated the 1982 dependency action.

Barbara Davis is an associate of Dr. Standahl. She works with Standahl at Human Technologies. Dr. Standahl did not testify at the dependency hearing. Davis testified that appellant first came to Technologies in February 1983, and that she had participated in about forty counseling sessions. Appellant received counseling for personal and parenting issues. Standahl also had indicated to Davis that the previous sexual abuse was also addressed. Davis testified that appellant was making progress in the counseling sessions at Technologies, and that appellant had also satisfactorily completed a parenting program. Her testimony indicates that appellant kept her appointments, and followed through on assigned parenting tasks. During a visit to appellant's residence in October 1984, Davis testified that appellant did not appear to have any discipline problems with the children at that time. Davis also testified that Standahl told her that appellant had called him on August 22, and that he returned appellant's call the next day.

Linda Olson, an employee at the local battered women's shelter, also testified at the dependency hearing. She had known appellant for approximately two years. Olson testified that appellant had been an active participant in the shelter's services, attending a group for battered women sponsored by the shelter. Olson also testified that appellant did not miss appointments at the shelter or otherwise behave irresponsibly. Olson further testified that appellant was a concerned parent, wanted to reunite her children in foster care as a family, and actively read literature regarding child psychology and parenting. Finally, Olson testified that appellant had made significant progress in overcoming the effects of her abusive marriage and that her parenting skills had improved.

The final witness at the dependency hearing was Michael Fischer, a social worker in private practice as a counselor. He had been seeing appellant since July of 1984. Because appellant was receiving intensive counseling from other sources, Fischer primarily saw his role as supportive. Fischer and appellant also addressed management issues in their sessions. He testified that appellant kept her appointments, that she was very concerned about the problems she was experiencing, and that the well being of her children was very important to appellant. His opinion of appellant was that she was providing competent parenting, and that she was seeking help for her weaknesses as a parent.

Relevant exhibits received into evidence included an evaluation of appellant's family prepared by a licensed consulting psychologist, and a tape recording made by Kitchenmaster of a conversation she had with A.C. and T.C.

The psychologist's report was prepared in December 1983 for a review hearing regarding appellant's children in foster care. The report was admitted into evidence at this hearing pursuant to stipulation. The psychologist indicated a concern that if the children in foster care were returned before appellant and the individual children successfully completed a family sexual abuse program, there was a high probability of incestuous activity occurring again within the family.

The tape recording was made by Kitchenmaster on September 5. In the taped conversation Kitchenmaster questioned A.C. and T.C. regarding the incidents they had discussed with her on August 29. Kitchenmaster testified that the children revealed the same information in the taped conversation as they did previously. A transcript of the tape indicates that T., the neighbor child involved in the clubhouse incident, also was present at the school incident, as was another older child. The transcript further indicates the children told appellant about both the school and clubhouse incidents. Finally, the transcript indicates the children told Asmus and Anderson about

the incident. It is impossible to ascertain from the context of the transcript when such statements were allegedly made to either appellant, or Asmus and Anderson.

## ISSUES

1. Is the trial court's order adjudicating dependency an order from which an appeal can be taken?

2. Is the trial court's determination that A.C. and T.C. are dependent children pursuant to Minn.Stat. § 260.015(6)(d) clearly erroneous?

## ANALYSIS

■ 1. Respondent argues that the court's order finding A.C. and T.C. dependent is not an appealable order.

Minn.Stat. § 260.291, subd. 1 (1984) reads in relevant part:

An appeal may be taken by the aggrieved person from a final order affecting a substantial right of the aggrieved person, including but not limited to an order adjudging a child to be dependent, * * *.

Inasmuch as this issue is controlled by statutory law, respondent's citations to case law holding to the contrary from other jurisdictions are irrelevant.

2. Relevant to this appeal the trial court premised its determination on the following findings:

3. That on August 24, 1984, [appellant] reported to authorities that a 10 year old boy had sexual relations with [A.C.] in a clubhouse which had been observed by [T.C.].

4. That on said date [appellant] did not report any such relations between [A.C. and T.C.].

5. That a week or two later [after Asmus and Anderson interviewed appellant on August 24], [appellant] admitted to Investigator Julie Asmus that sexual relations had taken place between A.C. and T.C. in a bunk bed.

6. That on August 29, 1984, A.C. and T.C. admitted having sexual relations at the Lincoln School and that they had told

their mother, [appellant], about the incident.

7. That [appellant] had reported said incestuous relations to her priest.

8. That [appellant] had been previously directed to participate in a non-offender sex treatment program, as a result of prior Dependency proceedings concerning other children of [appellant], but that [appellant] discontinued said program before completion.

10. That [appellant] has been counseling with Dr. Standahl completing an eight session parenting class, and has been counseling with Michael Fisher since July 18, 1984.

Appellant challenges the court's findings of fact 5, 6, and 7. Inasmuch as the trial court indicates in its memorandum that the determinations in finding 9 were not salient to its finding of dependency, we need not address appellant's challenge of finding 9.

■ This court will not set aside the trial court's factual findings in a juvenile matter adjudicating dependency unless those findings are clearly erroneous. *See Matter of Welfare of V.R.*, 355 N.W.2d 426, 427, 430 (Minn.Ct.App.1984).

Regarding findings 5 and 6, appellant objects to what she believes is implicit in those findings, that she withheld information from Asmus and Anderson on August 24 concerning sexual activity between A.C. and T.C. These findings merely reflect the testimony of Asmus and Anderson. We do not find the express language thereof to be clearly erroneous.

■ It is with some concern we address the final finding of fact challenged by appellant, finding 7. A thorough independent review of the record in this matter leads us to conclude there is absolutely no basis for the court's determination in finding 7 that appellant had reported an incestuous relationship between A.C. and T.C. to her priest. In point of fact, appellant testified that she had been raised a Baptist, and had recently resumed attending a Baptist church.

Appellant argues that the presence of this baseless finding taints the remaining findings of the court and warrants a reversal of the trial court's adjudication of dependency.

The inclusion of an unsubstantiated finding regarding an issue material to the outcome of this matter is indeed troubling. While we do not conclude that the inclusion of such a finding alone is sufficient to merit a reversal as urged by appellant, such inclusion compels this court to closely scrutinize the determination of the trial court in this matter.

A dependent child is a child "without proper parental care because of the emotional, mental, or physical disability, or state of immaturity of his parent * * *." Minn.Stat. § 260.015, subd. 6(d).

■ The court determined that A.C. and T.C. were dependent in that they were engaging in an incestuous relationship with the knowledge of appellant, that there was "little or no evidence" that appellant took action to prevent such behavior, and that appellant lacked the knowledge, ability, and care to prevent the incestuous activity. However, the record conceals more than it reveals regarding the extent to which the children engaged in incestuous activity with the knowledge of appellant.

Anderson, the investigating caseworker did not testify. Asmus testified only to a limited extent. There is no testimony from Anderson regarding the nature or scope of incestuous activity between the children she uncovered in her investigation. Her uncontroverted testimony indicates that appellant did not disclose any sexual activity between the children until the second interview. However, there is nothing in the record to support or refute that appellant withheld knowledge of sexual activity between the children in the first interview, merely that appellant withheld her suspicions. Danroth admitted he was not competent to testify regarding the current allegations of incestuous activity between A.C. and T.C. Dr. Standahl, with whom T.C. admitted at least some inappropriate behavior regarding A.C., did not testify. Kitch-

enmaster's testimony deals with the school incident and the clubhouse incident, as does the recording made by Kitchenmaster. The record is silent regarding the allegation in the dependency petition that the children engaged in sexual activity while appellant was talking on the phone or watching T.V. We note appellant did phone her psychologist on the day she discovered that A.C. had been sexually abused by a neighbor's child. Appellant also took A.C. and T.C. to that psychologist on August 24 with the specific purpose of addressing the possible sexual abuse of A.C. by T.C.

 Thus, we conclude that the specific conclusions of the trial court regarding the incestuous activity of the children and appellant's duplicity therein exceed the scope of what the record will support. Nevertheless, an independent review of the record compels us to conclude that the trial court's ultimate determination that T.C. and A.C. are dependent pursuant to section 260.015, subd. 6(d) is not clearly erroneous.

There has been a significant history of sexual abuse between appellant's children. T.C. was a victim of such abuse. The record supports that he is now beginning to act out sexually with A.C., who apparently was not subject to the previous abuse. Our holding is in no way intended to belittle the progress appellant has made in dealing with her personal and parenting problems. The holding is merely a recognition that sustained therapeutic intervention is necessary to address the incestuous behavior, and that it is in the children's welfare that the court closely monitor progress made during such intervention. We note that the court stayed its disposition placing A.C. and T.C. in foster care pending the outcome of this appeal. The court would not have done so if it believed that harm to A.C. was imminent. Thus we urge the court to review the necessity and advisability of removal of both children from appellant's custody during the course of therapeutic intervention:

> The purpose of the laws relating to juvenile courts is to secure for each child

alleged or adjudicated * * * dependent and under the jurisdiction of the court, the care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the child and the best interests of the state; to preserve and strengthen the child's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety cannot be adequately safeguarded without removal * * *.

Minn.Stat. 260.011, subd. 2 (1984). *See In the Matter of the Welfare of L.K.W.*, 372 N.W.2d 392 (Minn.Ct.App.1985).

### DECISION

1. An order adjudicating dependency is an appealable order.

2. The trial court's determination that A.C. and T.C. are dependent children pursuant to Minn.Stat. § 260.015(6)(d) is not clearly erroneous.

Affirmed.

HUSPENI, Judge, dissenting.

I respectfully dissent and would reverse the trial court.

The majority notes that "[t]here is absolutely no basis for the court's determination in finding 7 that appellant had reported an incestuous relationship between A.C. and T.C. to her priest." It concludes that, because of that erroneous finding, it must "closely scrutinize the determination of the trial court in this matter." I agree. I do not agree, though, that the trial court's determination can withstand that close scrutiny.

The involvement of A.C. and T.C. in incestuous behavior is a tragic circumstance. However, Minn.Stat. § 260.015, subd. 6(d), addresses not those traumatic events which might occur in the life of a child, but instead addresses the ability of a parent to properly meet the needs of that child.

A finding of dependency must be supported by clear and convincing evidence. Minn.R.Juv.Ct.P. 59.05. The record before this court on appeal indicates that appellant

mother promptly reported sexual abuse of A.C. and promptly sought professional assistance in connection with that abuse. The record simply does not support by any evidence, much less clear and convincing evidence, the one conclusion that would support a dependency finding here: that mother, aware of sexual abuse of and sexual activity between her children, allowed such abuse to go unreported and unchecked.